IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| Jennifer NEWMAN, | ) | Case No. 3:18-cv-74 |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| UNIVERSAL MEDICAL | ) | |
| ADMINISTRATION SERVICES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Before the Court is Plaintiff Jennifer Newman's ("Plaintiff") Motion for Default Judgment against Universal Medical Administration Services, LLC ("Defendant"). (ECF No. 10.) For the reasons that follow, the Court will **DENY** the Motion without prejudice.

### I. Factual Background and Procedural History

On April 19, 2018, Plaintiff filed her Complaint against Defendant, seeking to recover damages under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. § 955 *et seq.* (ECF No. 1 ¶ 1.) In the Complaint, Plaintiff alleged that she was an employee of Defendant, a corporation with its principal place of business in Windber, Pennsylvania, and that she suffers from bipolar disorder. (*Id.* ¶¶ 9-10.) Plaintiff never disclosed her disability to Defendant, and she alleges that her disability did not interfere with her employment. (*Id.* ¶ 11.) In fact, during her employment with Defendant, Defendant's owner, Patricia Grieshiemer ("Grieshiemer"), allegedly praised the quality of Plaintiff's work and told Plaintiff that she was on track for a raise. (*Id.* ¶ 12.)

1

However, on or around March 9, 2017, after Plaintiff had been working for Defendant for around five weeks, Plaintiff told Grieshiemer that she was not feeling well and asked if she could continue her shift from home. (*Id.* ¶ 13.) It was common practice for Defendant's employees to work from home. (*Id.* ¶ 14.) Rather than granting her request, Grieshiemer asked Plaintiff to meet with her later that day. (*Id.* ¶ 15.) At this meeting, Grieshiemer told Plaintiff that she was being terminated because Plaintiff's daughter-in-law, who was also an employee of Defendant, had "let it slip" that Plaintiff has bipolar disorder. (*Id.* ¶¶ 17-18.) Grieshiemer allegedly made the following statements about Plaintiff's condition: "I was misinformed when I told you that you were doing great"; "People with bipolar cannot be medical billers"; and "You are in the wrong profession." (*Id.* ¶ 19.) Grieshiemer also suggested that Plaintiff should "try to get on disability." (*Id.*) Finally, Grieshiemer indicated that there were complaints from clients about Plaintiff's work, although Plaintiff had never been informed of any such complaints and Plaintiff's former supervisor told Plaintiff that she had not received any complaints from clients. (*Id.* ¶¶ 20, 22.)

Defendant terminated Plaintiff on the same day as this conversation. (*Id.* ¶ 21.) Plaintiff alleges that she was terminated due to her disability, and she requests lost wages, punitive damages, attorney's fees, pre-judgment and continuing interest, costs, and "[o]ther such relief as the Court may deem just and proper." (*Id.* at 6.)

On June 19, 2018, Defendant was allegedly personally served[1] at 429 Park Place, Windber, Pennsylvania (ECF No. 5), Defendant's principal place of business (ECF No. 1 ¶ 8).

---

[1] Plaintiff's counsel, in an affidavit, claims that Defendant was served by hand delivery (ECF No. 6-2); however, the Return of Service indicates that Jonathan Weise was the individual on whom service was made, and counsel does not explain Weise's relationship to Defendant. (ECF No. 5.)

2

On July 11, 2018, Plaintiff filed a Request for Entry of Default, asking the Clerk of the United States District Court for the Western District of Pennsylvania to enter default against Defendant pursuant to Federal Rule of Civil Procedure 55(a). (ECF No. 6.) The Clerk entered default on July 12, 2018. On September 10, 2018, Plaintiff filed a Motion for Default Judgment, along with two affidavits from Plaintiff's counsel and Proof of Service. (ECF No. 10, 10-2, 10-3, 10-4.)

## II. Legal Standard

Under Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once the clerk enters default, the party seeking default judgment must ask either the clerk or the court to enter a default judgment. Fed. R. Civ. P. 55(b). In order for the clerk to enter a default judgment, the plaintiff's claim must be for either a sum certain or a "sum that can be made certain by computation." *Id.* In all other cases, a party must apply to the court for default judgment. *Id.* Outside of the parameters of Rule 55, "the entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984).

However, the United States Court of Appeals for the Third Circuit has provided district courts with some factors to guide the exercise of their discretion. The Third Circuit has stated that "[t]hree factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). When the defendant is in default and has not opposed the motion for

3

default judgment, district courts give less deference to these factors. *See Broadcast Music, Inc. v. George Moore Enters., Inc.*, 184 F. Supp. 3d 166, 170 (W.D. Pa. 2016).

In addition, "prior to the entry of default judgment, the [d]istrict [c]ourt must satisfy itself that the [c]ourt has both subject matter jurisdiction over the action and personal jurisdiction over the defendant against whom the default judgment is sought." *Harris v. Dollar General Corp.*, Civil Action No. 16-416, 2016 WL 2733227, at *1 (W.D. Pa. May 11, 2016) (citing *Lampe v. Xouth, Inc.*, 952 F.2d 697, 701 (3d Cir. 1991) ("It is an elementary requirement that personal jurisdiction be established in every case before a court has power to render any judgment.")); *Allaham v. Naddaf*, 635 F. App'x 32, 36 (3d Cir. 2015) ("If a court lacks personal jurisdiction over a defendant, the court does not have jurisdiction to render a default judgment, and any such judgment will deemed [sic] void."). Finally, before entering a default judgment, the court must determine whether the well-pleaded facts in the plaintiff's complaint state a cause of action against the defendant. *See Caplan v. Premium Receivables LLC*, No. 2:15-cv-474, 2015 WL 4566982, at *1 (W.D. Pa. July 29, 2015).

## III. Discussion

Based on the above-described standard, before entering default judgment, a district court must be satisfied that (1) the *Chamberlain* factors favor the entry of default judgment, (2) the court has subject matter and personal jurisdiction, and (3) the plaintiff's complaint plausibly states a claim.

Dealing first with the *Chamberlain* factors, the Court finds that the factors favor granting default judgment. Plaintiff will clearly be prejudiced if default judgment is denied—because Defendant has yet to respond or appear in any way, Plaintiff's claims and potential for recovery

4

will remain indefinitely suspended in legal limbo unless default judgment is entered. Furthermore, because Defendant has not filed an answer or motion to dismiss, the Court has no knowledge of any defenses Defendant may have. Similarly, because Defendant has not appeared, the Court cannot evaluate whether Defendant has a good reason for delay that could weigh against granting default judgment.

Second, the Court clearly has subject matter jurisdiction over Plaintiff's ADA claim, 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's PHRA claim, 28 U.S.C. § 1367(a). However, the question of personal jurisdiction places the Court in more of a quandary. While the Court is satisfied that Defendant is subject to general and specific personal jurisdiction in Pennsylvania, the Court is concerned about another aspect of personal jurisdiction: proper service. *See Harris*, 2016 WL 2733227, at * 1 ("A necessary prerequisite to the exercise of personal jurisdiction over a defendant is that the complaint and summons be served on the defendant.").

Under Federal Rule of Civil Procedure 4, the plaintiff is responsible for having the summons and complaint properly served on the defendant. Fed. R. Civ. P. 4(c). Proper service can be effected by following the rules of service for the state in which service will be made or the state where the district court sits. Fed. R. Civ. P. 4(e)(1). Service on a corporation can also be done by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1)(B).

5

Here, regardless of whether Plaintiff attempted service pursuant to Pennsylvania law, as permitted by the Federal Rules of Civil Procedure, or federal law, this Court cannot determine whether service was proper. According to Plaintiff's Proof of Service, Plaintiff served Jonathan Weise ("Weise") at 429 Park Place, Windber, Pennsylvania. (ECF No. 5.) However, as discussed in footnote 1, *supra*, Plaintiff does not indicate Weise's relationship to Defendant in the Proof of Service or Plaintiff's various affidavits. Furthermore, Plaintiff's Complaint names Patricia Grieshiemer as the owner of Defendant, not Weise. Therefore, the Court is not satisfied that service on Defendant was properly effected. Without proper service, Plaintiff's Motion for Default Judgment must be denied until Plaintiff can demonstrate to the Court that service was properly made on Defendant through Weise. *See Harris*, 2016 WL 2733227, at * 1.

Finally, for purposes of thoroughness, the Court will address whether Plaintiff's Complaint states a cause of action against Defendant.

Plaintiff's first count is based on the ADA.[2] In order to state a claim of disability discrimination under the ADA, a plaintiff must allege that she (1) has a disability, (2) is a "qualified individual," and (3) suffered an adverse employment action because of that disability. *See Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 142 (3d Cir. 1998).

A plaintiff has a disability for purposes of the ADA if she (1) has "a physical or mental impairment that substantially limits one or more major life activities," (2) has a record of such a physical or mental impairment, or (3) is "regarded as" having such an impairment. 42 U.S.C. § 12102(1). Here, the Complaint contains no factual allegations about Plaintiff's bipolar disorder

---

[2] This Court notes that Plaintiff appears to have exhausted her administrative remedies, as required by the ADA, *see* 42 U.S.C. § 2000e-5, before filing the present lawsuit. (ECF No. 1 ¶ 5.)

6

limiting a major life activity, but it does claim that Plaintiff was terminated because Grieshiemer believed "people with bipolar cannot be medical billers." (ECF No. 1 ¶ 19.) These allegations are sufficient to state a claim for being "regarded as" having a disability. *See* 42 U.S.C. § 12102(3)(A) ("An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.").

Plaintiff also has sufficiently alleged that she was a "qualified individual." Under the ADA, a plaintiff is a "qualified individual" if, with or without reasonable accommodation, she can "perform the essential functions of the employment position." 42 U.S.C. § 12111(8). Here, Plaintiff alleges that Grieshiemer praised Plaintiff's performance and the quality of her work, including that she was on track for a raise. (ECF No. 1 ¶ 12.) Plaintiff also avers that her supervisor told her that she had never had any complaints from clients about Plaintiff and that Plaintiff was adequately performing all the tasks assigned to her. (*Id.* ¶ 22.) Lastly, Plaintiff claims that her bipolar disorder never interfered with her ability to perform her job. (*Id.* ¶ 11.) At this stage, Plaintiff has plausibly alleged that she could perform the essential functions of her job without any accommodation.

Finally, Plaintiff claims that her employment with Defendant was terminated on the same day Grieshiemer told Plaintiff that "people with bipolar cannot be medical billers" and "You are in the wrong profession." (*Id.* ¶ 19.) These allegations are sufficient to establish that Plaintiff was terminated because she was "regarded as" having a disability.

7

In summary, Plaintiff has alleged enough to state a claim for disability discrimination under the ADA.[3]

The PHRA claim involves a similar analysis to the ADA claim—the only significant difference is the definition of "disability" under the PHRA. *See Rubano v. Farrell Area Sch. Dist.*, 991 F. Supp. 2d 678, 689 n.7 (W.D. Pa. 2014) ("Thus, while the disability standards are different, the remaining elements of [the plaintiff's] ADA and PHRA claims are essentially the same and can be analyzed together."); *see also Gress v. Temple Univ. Health Sys.*, Civil Action No. 13-CV-5414, 2018 WL 3970436, at *6 n.3 (E.D. Pa. Aug. 20, 2018) ("Because the PHRA and the ADA are 'basically the same,' Pennsylvania courts generally interpret the PHRA in accord with its federal counterpart."). Under the PHRA, an individual is "regarded as" having a disability if she, among other definitions, "[h]as a physical or mental impairment that does not substantially limit major life activities but is treated by the covered entity as constituting such limitation." *Id.* (quoting 29 C.F.R. § 1630.2(*l*)). As was discussed *supra*, Plaintiff clearly alleged that she has a mental impairment, bipolar disorder, that does not limit her ability to work but was treated by Defendant as limiting her ability. Therefore, Plaintiff has stated a claim under the PHRA.

## IV. Conclusion

Based on the above discussion, the Court finds that the *Chamberlain* factors weigh in favor of granting default judgment; the Court has subject matter jurisdiction over Plaintiff's claims; and

---

[3] Plaintiff also seems to allege a claim of failure to accommodate under the ADA. (ECF No. 1 ¶¶ 28-29.) However, Plaintiff explained elsewhere in her Complaint that her bipolar disorder did not interfere with her ability to perform her job (*id.* ¶ 11), and it is thus unclear why Plaintiff would need reasonable accommodation. Furthermore, as explained *supra*, Plaintiff already states a claim for disability discrimination under the ADA. Therefore, at this stage, the Court will not analyze the failure to accommodate claim.

8

Plaintiff's Complaint appears to state claims for disability discrimination under the ADA and PHRA. However, the Court cannot grant Plaintiff's Motion for Default Judgment at this time, as the Court cannot ascertain whether service on Defendant was proper. The Court therefore will **DENY** the Motion for Default Judgment without prejudice, such that Plaintiff can refile her Motion with an affidavit demonstrating that service on Weise was proper under the Federal Rules of Civil Procedure.

A corresponding order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| Jennifer NEWMAN, | ) | Case No. 3:18-cv-74 |
|---|---|---|
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| UNIVERSAL MEDICAL | ) | |
| ADMINISTRATION SERVICES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

NOW, this 17th day of September 2018, upon consideration of the Motion for Default Judgment (ECF No. 10) filed by Plaintiff, it is **HEREBY ORDERED** that Plaintiff's Motion for Default Judgment (ECF No. 10) is **DENIED**.

BY THE COURT:

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**