IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Jennifer NEWMAN, | ) | Case No. 3:18-cv-74 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| UNIVERSAL MEDICAL | ) | |
| ADMINISTRATION SERVICES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

Before the Court is Plaintiff Jennifer Newman's ("Plaintiff") Brief in Support of Damages (ECF No. 14).

On April 19, 2018, Plaintiff filed her Complaint against Defendant Universal Medical Administration Services, LLC ("Defendant"), seeking to recover damages under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. § 955 *et seq.* (ECF No. 1 ¶ 1.) After Defendant failed to respond, Plaintiff filed a Request for Entry of Default (ECF No. 6), which the Clerk entered on July 12, 2018 (ECF No. 7). On September 10, 2018, Plaintiff filed a Motion for Default Judgment. (ECF Nos. 10, 10-2, 10-3, 10-4.)

The Court denied Plaintiff's Motion for Default Judgment without prejudice on September 17, 2018. (ECF No. 11.) The Court indicated that Plaintiff could refile her Motion with a showing that Defendant was properly served. (ECF No. 11 at 6.) Plaintiff refiled her Motion on October 15, 2018. (ECF No. 12.) The Court found sufficient proof of service and granted

Plaintiff's Motion for Default Judgment on October 31, 2018. (ECF No. 13.) However, the Court ordered further briefing and supporting evidence for Plaintiff's claimed damages. (*Id.* at 2.)

On November 19, 2018, Plaintiff filed her brief in support of damages (ECF No. 14). Plaintiff asserts that she is entitled to back pay in the amount of $15,513.80[1] and attorney's fees and costs in the amount of $7,731.25. (*Id.* at 2-4.)

Plaintiff seeks damages under the ADA. (*Id.*) "A chief remedial purpose of employment discrimination statutes such as the ADA is 'to make persons whole for injuries suffered on account of unlawful employment discrimination,'" *Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 440 (3d Cir. 2009) (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975)), including through back pay awards, *id.* at 441. Back pay has been described as "an amount equal to the wages the employee would have earned from the date of discharge to the date of reinstatement, along with lost fringe benefits such as vacation pay and pension benefits." *Robinson v. Se. Pa. Transp. Auth.*, 982 F.2d 892, 899 (3d Cir. 1993) (quoting *United States v. Burke*, 504 U.S. 229, 239 (1992)); *see Linhart v. Zitelli & Brodland, P.C.*, Civil Action No. 10-530, 2011 WL 4971729, at *13 (W.D. Pa. Oct. 19, 2011) ("Back pay is meant to compensate an individual for lost wages between the discriminatory discharge and verdict and is determined by computing the 'difference between the actual wages earned and the wages the individual would have earned in the position that, but for the

---

[1] Plaintiff characterizes some of this amount as "lost wages," but the Court finds that the lost wages claimed in this case are a form of back pay. *See Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 313 (3d Cir. 2006) (explaining that the jury found in favor of the plaintiff and awarded her damages for "lost wages, also known as back pay"); *Linhart v. Zitelli & Brodland, P.C.*, Civil Action No. 10-530, 2011 WL 4971729, at *13 (W.D. Pa. Oct. 19, 2011) ("Back pay is meant to compensate an individual for lost wages between the discriminatory discharge and verdict . . . ." (citing *Gunby v. Pa. Elec. Co.*, 840 F.2d 1108, 1119 (3d Cir. 1988))).

discrimination, the individual would have attained.'" (quoting *Gunby v. Pa. Elec. Co.*, 840 F.2d 1108, 1119 (3d Cir. 1988))).

Here, Plaintiff has supported her claim for back pay by attaching a copy of a pay stub to her brief (ECF No. 14-3). The pay stub indicates that over the pay period of February 19, 2017 to March 4, 2017, Plaintiff worked 75 hours for Defendant at a rate of $9 per hour, for a total of $675 for two weeks, or $337.50 per week. (ECF No. 14-3.) Thus, back pay must be awarded to put Plaintiff in the financial position she would have been in had Defendant not improperly discharged her and continued paying her $337.50 per week.

Plaintiff first seeks back pay for her 36.8 weeks of unemployment between March 2017 and July 2018. (ECF No. 10-3 ¶¶ 3, 6, 9; ECF No. 14 at 2-3.) Based on her 36.8 weeks of unemployment and a pay rate of $337.50 per week while employed by Defendant, Plaintiff is entitled to $12,420 in damages. The Court will not award the full $13,248 requested by Plaintiff as the pay stub on the record does not support Plaintiff's claim that she made $360 per week. (*See* ECF No. 14-3.)

Next, Plaintiff seeks $2,265.80 in back pay (which she terms "lost wages") for the disparity between what Plaintiff earned in Defendant's employ and what Plaintiff earned from employment after Defendant terminated her. (ECF No. 14 at 3.) Plaintiff filed what she claims is a pay stub from another employer showing her reduced wages after her termination by Defendant; however, the document is almost completely illegible and does not identify Plaintiff's employer. (ECF No. 14-5.) The Court is unable to divine from the purported pay stub how many hours Plaintiff worked per week and what her hourly pay rate was. Further, Plaintiff claims an additional entitlement to $440 in lost wages based on a two-week period of employment with a

different employer (ECF No. 14 at 4), but she does not provide any documentary support for her damages claim. Instead, she simply states that she never received a pay stub from that employer. (*Id.*) In its October 31, 2018 Memorandum Order, this Court ordered Plaintiff to support her assertions regarding damages with adequate documentation. (ECF No. 13 at 2.) Because Plaintiff failed to so support the $2,265.80 in lost wages/back pay, the Court will not award this amount.

Finally, Plaintiff claims entitlement to attorney's fees and costs in the amount of $7,731.25 based on 24.75 hours of legal work. However, this Court has exercised its responsibility to independently assess the reasonableness of the attorney's fees and deems $4,575 to be the maximum reasonable amount of attorney's fees.

"The ADA permits the award of a 'reasonable attorney's fee, including litigation expenses and costs' in the discretion of the court, to a 'prevailing party.'" *Equal Emp't Opportunity Comm'n v. Hesco Parts Corp.*, 57 F. App'x 518, 522 (3d Cir. 2003) (quoting 42 U.S.C. § 12205). "[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Ward v. Phila. Parking Auth.*, 634 F. App'x 901, 903 (3d Cir. 2015) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Once a district court finds that a plaintiff is a "prevailing party," the district court must determine whether the claimed attorney's fees are reasonable. *See Evans v. Cernics, Inc.*, CIVIL ACTION NO. 3:14-CV-125, 2018 WL 1181755, at *1 (W.D. Pa. Mar. 5, 2018).

Here, Plaintiff is a prevailing party as she succeeded on her claims at default judgment. *See Air Vent, Inc. v. Vent Right Corp.*, No. 02-08-cv-00146, 2011 WL 2039106, at *1-2 (W.D. Pa. May 24, 2011) (awarding attorney's fees to a prevailing party at default judgment). Thus, the Court must determine Plaintiff's reasonable attorney's fees through the calculation of the "lodestar"

4

amount, "which requires multiplying the number of hours reasonably expended by a reasonable hourly rate." *Kurschinske v. Meadville Forging Co.*, No. CIV.A. 06-87, 2008 WL 4462294, at *1 (W.D. Pa. Sept. 30, 2008) (citing *Washington v. Phila. Cty. Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996)).

"The 'starting point' in determining the appropriate hourly rate is the attorneys' usual billing rate." *Pa. Envtl. Def. Found. v. Canon-McMillan Sch. Dist.*, 152 F.3d 228, 231 (3d Cir. 1998) (quoting *Pub. Interest Research Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995)). "[T]he district court should then consider the 'prevailing market rates' in the relevant community." *Id.* (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).

Here, Plaintiff's counsel, attorneys from Pittsburgh, Pennsylvania, billed at hourly rates of $425 and $275 per hour. (ECF No. 14-1.) Plaintiff offered no arguments as to the reasonableness of these rates, in spite of the Court's Order to support their claimed damages with briefing and documentation (ECF No. 13 at 2). However, on the record before it, the Court concludes that these rates are reasonable based on prevailing market rates.

Next, when "calculating the second part of the lodestar determination, the time reasonably expended, '[t]he district court should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *Pa. Envtl. Def. Found.*, 152 F.3d at 232 (quoting *Windall*, 51 F.3d at 1185).

Here, Plaintiff's counsel claimed that they spent 24.75 hours on this case. However, the Court finds that attorney "BP's" hours are not reasonable. The documentation submitted by Plaintiff indicates that BP spent an unreasonable amount of time on the described tasks, including

drafting a short Complaint and filing numerous documents. (ECF No. 14-1.) Considering the limited amount of work required by this case, which was resolved at the default judgment stage, and the lack of complicated facts or law, the Court finds that the time reasonably expended for the tasks completed by BP is 12 hours instead of 21.75 hours.

Multiplying $425 (the reasonable hourly rate for attorney CW) by 3 (the reasonable number of hours expended by CW) yields a lodestar of $1275. Multiplying $275 (the reasonable hourly rate for BP) by 12 (the reasonable number of hours expended by BP) yields a lodestar of $3,300. The total attorney's fee award will thus be $4,575. The Court will also award Plaintiff $475 in costs. (ECF No. 14-2.)

In sum, the Court will award Plaintiff a total of $17,470 in damages, which includes (1) $12,420 in back pay; (2) $4,575 in attorney's fees; and (3) $475 in costs.

**NOW**, this 16th day of January, 2019, upon consideration of Plaintiff's Brief in Support of Damages (ECF No. 14), it is **HEREBY ORDERED** that judgment is entered in favor of Plaintiff Jennifer Newman and against Defendant Universal Medical Administration Services, LLC, in the amount of $17,470.

BY THE COURT:

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**